IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

2012 OCT 12 PM 12: 13

U.S. DIST
MIDDLE DISTRICT OF TN

ALA'N B JORDAN,

    PLAINTIFF,

Vs

City of Nashville Police Department;

    Defendant

## Pro Se Complaint

Comes now Plaintiff Ala'n Jordan and alledges the following in his cause of action against Defendant Count One – Violations of the Civil Rights Act of 1991, 42 U.S.C 1981;count Two- Viiolations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e and Count Three- Violations of the Tennessee Human Rights Act TCA 4-21-101 et seq.

1. Plaintiff Ala'n B. Jordan resides in Davidson County, Tennessee

2. Defendant, City of Nashville, is located in Davidson County, Tennessee

### JURISDICTION AND VENUE

3. This action is brought under the Civil Rights Act of 1991, 42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e; and the Tennessee Human rights Act, TCA4-21-101 et seq and the common law of the State of Tennessee.

4. This Court has jurisdiction under 28 U.S.C. 1331 to hear Plaintiffs claims arising under the Constitution and laws of the United States.

5. This court has jurisdiction under 28U.S.C. 1343 (4)to hear Plaintiffs claims to revocer damages and to secure equitable relief under any Act of Congress Providing for the protection of civil rights.

6. This Court has supplemental jurisdiction ovr all the state law claims alleged in this complaint under 28 U.S.C. 1367 as there is a common nucleus of operative facts between state and federal law claims.

7. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. 1391(b)(2) as this is the judicial district in which substantial part of the events or omissions giving rise to this claim occurred.

General Factual Allegation

8. Plaintiff is an African-American male police officer.

9. The City of Davidson County has a department within it known as Nashville Davidson County Metropolitan Police Department.

10. May 4 2011 I arrived to work approximately 0615 entered the North Station building for roll call. I went to the copy room and made copies of my activity sheet. I went to the roll call room, once there I proceeded to attempt to sis in my usual area (the rear Table) in the room along with other officers and noticed that it was taken, so I sat beside officer Drew near the white property box momentarily and realized that I had not checked my mailbox. While sitting, Officer Davenport made the statement that Officer Cooley had "upset the brothers" because I usually sit at that table and then said "you going to upset the yeng and Yang" cause the brothers are sitting in the back like they on a bus. Officer Cooley turned around on his seat and said "I thought that's where they needed to sit was on the back of the bus" they laughed. I got up and moved to where officer Richards was sitting as the officers continued to laugh and looked at me, I looked up and replied to officer Davenport and Cooley they had no manners and needed to be taught some. Davenport said something I could not hear the comment as I left the room.

11. I left the roll call and advised my immediate supervisor Sgt Keith McGraph and also it was a slap to the face of every black person or person of color there and it was out of order and racist and a hostile work environment and I didn't find anything funny about it.

12. Monday May 9, 2011 I cam to work as usal and answered my calls this day officer Cooley basically kept no eye contact in my direction which was fine. Calls were coming in rather quickly and there were different zones having to back up others nothing unusual. Approx 1256 this date there was a 10-41 (domestic) dispatched to officer Cooley and I was the back up for him at 3260 Hinkle Drive, while in route I was expecting Cooley to advise where to meet up so as to go to the call together, after a few moments exact time unknown Cooley attempted to give a Signal 9 (disregard) I arrived to the home anyway (officer safety) officer Cooley( looked pale as I drove up he saw me. I exited my unit he(Cooley indicated that the persons that were there were gone, but then got back out of his car and said "I guess we better go check and make sure nobody is dead. Once outside Officer Cooley shook my hand and thanked me as I went to my unit. Cooley filled out a report and I waited till he finished. He gave the thumbs up and we left. A few moments later he called me

asked me if I saw a vehicle as I was traveling in the opposite direction (via radio) I replied no.

13. Sun May 22 2011 Officer Cooley came to my unit and began to say that he was s sorry for the remark the was made and that it was silly for him to make a remark like that sometimes he lets his mouth get away with him and he didn't want any problems between us or anybody. I replied "that he didn't know me and when you make a remark like that which is very racial it sets the time for hostile a work environment." I come to work and will be professional and I don't say anything to anyone and also that type remark is like a bullet that has been fired once you pull the trigger you can't go and get the bullet back. I thanked Officer Cooley for education me as to how he really thinks. I advised him that I am just in thinking mode and will remain there for quite some time. I also advised Officer Cooley that this was a slap to the face of every person of color all the way to the President and that was a total shock to me and anyone that paid attention. I advised Officer Cooley I had to go work a crash. Officer Cooley asked if he could treat me to breakfast it was on him again he begged to allow him to treat me to breakfast at Mallards.

14. May 24 2011 I was working a 10-46 (crash with injuries) on I 65 south near Dickerson road. The victims could speak little English. Officer Lusk was there to assist me. It was later determined that the victims only spoke Korean and one of the occupants had to be transported for medical treatment. I went to the skyline hospital to make sure the occupant was able to communicate as to what happened approximate 1600 hrs (4pm) received a phone call on my cell from 589-7110 I was not familiar with this number and answered. It wsa officer davenport who asked if everything was ok and that I seemed a little serene. I replied that I was trying to work a crash and in the process of making a arrest and I would get back to him later and hung up.

15. May 25, 2011 roll call I was advised to go and relieve C detail at General Hospital I checked my laptop and saw where the call originated from a 10-63(suicidal person) from 1212 rugby 11-0410209. I arrived at the hospital and briefed on the situation from the C detail officer along with a sheriff deputy. Officer Davenport came in to the hospital with a prisoner but came to me asked if I was having some family problems or something cause I seemed down I replied" I was fine as he stood between the 2 parties and my self that was seated across from officer wiggington. Officer davenport then stated "he would be watching me, then proceeded down the hall in the hospital.

16. June 8 2011 I was called by Sgt Granberry to come back to the station cause Lt.Snyder wanted to speak to me. I proceeded to Lts Office and knocked on the door. Lt Snyder asked me to pull up the door a minute I did. And took a seat. Lt Snyder stated that North was a good place to work and that's why folks bid here I agreed and said I came here when Captain Kelton came here. Lt asked me about the comments that were made by Officer Davenport and Cooley . Lt said there had been fights to

break out at other stations over different things. He asked me about my
feelings and I expressed that I was upset and I did not feel comfortable
in this environment. Lt.said he remembered how enjoyable it used to be
to come to work I agreed. Lt also stated that if I needed to go to PASS I
could go talk with them I declined. Lt then formulated that if I thought
Cooley was a racist by making that remark. I replied that I really don't
know what he was. Lt Snyder said that " I guess if it looks like a duck,
walks like a duck it must be a duck. I just said nothing. I advised Lt that
Cooley came to my car and attempted to apologize but it was not
authentic he was searching for words. I told Lt. Snyder this is 2011 and
this type behavior just going to go on wide open? Lt. Snyder looked out
the window of his office and said Cooley didn't realize how deep wounds
were for to make this type of statement Lt. Snyder winched up his face
and shook his head. Lt. Snyder asked who was there I recall officer
pennington Officer Drew, Officer Davenport I couldn't recall when I was
leaving roll call I just saw Officer davenport looking at me. I received a
call on my cell from officer Davenport when I was working a crash
asking if I was al right or if my family life was ok and I asked if his was
ok and hung up my cell. I told Lt. that my parents didn't raise a fool.
Lt Snyder agreed and said you are exactly correct you haven't done
anything wrong this is real bad. The commander and I are trying to see
how to deal with this.
17. June 12,2011 roll call 0621 hrs I spoke to a few folds then took a seat.
Officer Cooleys rookie and I were talking about how I was proud of my
kids I was graduating and being in college. Officer Cooley came in and
sat in the front table where his rookie was seated near the back wall.
While waiting in line for a taser officer cooley was in front of me he
turned around and said good morning I responded back sir . asl I exited
the building, Officer Cooley was sitting in his patrol vehicle on the
passenger side his rookie was sitting in the drivers seat. Cooley asked
again if I wanted to go to Mallards to eat I declined and went to my unit.
18. June 13th 2011 I had traffic court 0830 hrs while sitting in traffic court
officer davenports partner & I had small conversation Officer davenport
entered that court room he sat and had conversation with Oficer Dewalt
and another unknown officer. He remained quiet for most of the
duration in court room when his partners case was done they left the
court room.
19. june 13th 2011 I took a call at 2715 Clarksville Pike 10-71A (11-470216)
when I arrived on the scene at the church, there was car 15 Davenport
and partner on the scene. I turned into the right side of the parking lot of
the north end neat the churches chicken lot and proceeded to the rear of
the area as Davenport and his partner came back to where I was in their
unit. Officer Davenport had walked to the rear with his partner and his
partner located a open door but Davenport had got back in the unit and
remained there but advised that they didn't write any notification I

advised him I woud at least they (the church) would know it was checked.

20. June 16th 1630 I met with Mr Walt Searcy along with Officer Kevin Luck and we explained the situation to him. Mr Searcy explained that this was a hostile work environment and that things probably wont get any better. Officer Lusk advised that he had also been called to Lt.Snyders office and at that time the Commander attended this meeting and gave account of the periodical events of comments that continued at the station. Mr. Searcy asked what we wanted t do? I asked what the options were. Mr. Searcy Advised that we could give them a few weeksto see what or if any else would be done. Or we could file with the EEOC and they could launch an investigation after which a right to sue letter would be brought to the departments attention. I xplained that the environment is hostile and is uncomfortable we will moniter for a few weeks. We expressed how whites are disciplined different than blacks.
21. june 20th 1531 I received a call from Officer Lusk stating that when he was turning in our equipment. Sergeant Clay brooks advised him that he had herd rumor that Officer Lusk had talked to the Commander about racial comments that were being made at the station and the Commander didn't do anything about it. Officer Lusk then stated that the Commander should have already sent it to OPA for investigation as soon as he learned how offensive that it was.
22. aug 2 2011 I met with Officer Lusk he stated that Lt. Carroll wanted him to fill out paperwork from Sue Bibb from Human Resources on the complaint. Officer Lusk agreed that I officer Jordan called it how it was going to work due to the fact that there wan no investigation done when it should have been started and not there was going to be a possible attempted to back date for the investigation. Officer Lusk expressed concern of some of the wording that the paperwork contained and that he wanted his personal lawyer to look at the paperwork and explain its terms. Officer Lusk stated that Lt.Caroll appeared to get upset because he wanted his lawyer to look at the paperwork before he filled it out.
23. Aug 3 Lt. Snyder, Lt.Carrol, & Commander Carter met I came inot the station approx 1520 hrs I saw Lt Carrol going back into his office with a large bluebook he spoke but appeared to be surprised.
24. Sept 13 2011 I took my patrol unit to get the computer worked on Mr. James Bratton stated that he helped a officer with computer problems and the officer wanted to make racial jokes while he was working on the officers computer. Mr Brtton stated that he was only trying to help the officer but didn't want to deal with the racial jokes like that. I aske Mr. Bratton where the officer worked and he replied north station and his name was Davenport and he always seems likt he has something to say about minorities for some reason,
25. sept 14 2011 officer Davenport and Pennington were having a open discussion at the beginning of roll call and the comment was bake about

one of the other brother was Aryan Nation. Sgt. Granberry stated that there will be no statements like that tolerated.
26. This conduce includes, but is not limited to the use of racially derogatory remarks when referring to African American officers
27. The defendant discriminates against African –American police officers by applying a harsher standard to their conduct and to appear less favorable .
28. During Plaintiffs employment , Plaintiff has been subjected to a racially hostile environment with co-workers making racially charged statements.

## Count One
### Violations of the Civil Rights Act of 1991, 42 US.C 1981
### Against Defendant

29. Defendants conduct described herin and Plaintiff violated the Civil rights Act of 1991, 42 U.S.C. 1981.

30 Defendant acted intentionally, recklessly, or maliciously when they refused to act and or advise on the situation at hand or progress.
31. defendant was part of a knowing and intentional pattern of discrimination in violation of the Civil Rights Act of 1991.
32. As a direct and proximate result of Defendantd violation of Civil rights acts of 1991. Plaintiff has suffered distress, humiliation, embarrassment and emotional pain along with other damages.

## Count Two
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C 2000e

33. Plaintiff filed his charge with the EEOC and Demanded his Right to Sue Letter.

Nashville had over 500 employees.

During all times complained herin, Nashville is the employer under the terms of Title VII of the Civil Rights Act, 42 U.S.C. 2000e (b) and (f) such as Nashville is subject to the rule, regulations and penalties of this law.
34. Nashville engaged in , condoned the use of discriminatory conduct of its employees which resulted in racially hostile work environment.

35. Nashville is directly or vicariously liable for race discrimination under Title VII which results from the discriminatory practices and policies of its command level staff at the Nashville Police Department.

### Violations of the Tennessee Human Rights Act against Defendant

36. The conduct described herin constitutes unlawful discriminatory practices on the part of the Defendant in violation of the Tennessee Human Rights Act, T.C.A.4-21-101 et seq

37 Defendant is a "person" as defined by the Tennessee Human Rights Act.

38Defendant did segregrate or classify Plaintiff based upon his race in a way the would tend to adversely affect him as an employee.

**Wherefore, Plaintiff prays:**
**1. For a Jury to be empanelled and a judgment of compsentory damages to include emotional suffering,**
**2. punitive damages;**
**3. Attourneys fees and the cost of litigation to include expert fees;**
**Damages for humiliation and embarrassment;**
**4.all other remedied and injunctions as are necessary and proper to eliminate the discriminatory practices of the defendant;**
**7. A judgment against Defendant for prejudgments interest; and**
**8. Such other relief as this Court deems proper.**

BY: _Alan Jorda_
1041 Blairfield Dr
Antioch, TN 37013