UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALA'N B. JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12-01043 |
| ) | Judge Sharp |
| THE METROPOLITAN GOVERNMENT OF ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff, Ala'n B. Jordan, an African-American, is a police officer with the Nashville Metropolitan Police Department. He claims that during his employment he has been subjected to a hostile work environment, and has sued Defendant Metropolitan Government of Nashville and Davidson County under 42 U.S.C. § 1981 (Count One), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count Two), and the Tennessee Human Rights Act ("THRA") Tenn. Code Ann. § 4-21-101 *et seq.* (Count Three).

Defendant moves to dismiss all three claims. In response, Plaintiff concedes that dismissal of Counts One and Three is appropriate. Given that concession, given that 42 U.S.C. § 1983 is the exclusive vehicle for bringing a Section 1981 claim against state governmental units, McCormic v. Miami Univ., 693 F.3d 654, 661 (6th Cir. 2012), and given that Plaintiff's THRA claim is barred by the one-year provision found in Tenn. Code. Ann. § 4-21-311(d), the Court will dismiss Counts One and Three of the Amended Complaint.

Turning to Count Two, Defendant moves for dismissal under Fed. R. Civ. P. 12(b)(6),

1

arguing that Plaintiff fails to state a claim for a hostile work environment under Title VII. This Court agrees.

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showng that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Nevertheless, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). That is, while Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (citing Fed. Rule Civ. Proc. 8(a)(2)). In short, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555 (2007).

"Title VII protection extends to a plaintiff who shows that his or her workplace 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment.'" Kuhn v. Washtenaw County, 709 F.3d 612, 627 (6th Cir. 2013) (quoting, Harris v. Forklift Sys., Inc., 510 U.S. 17, 21(1993) (citation and internal quotation marks omitted)). Thus,

"[t]o succeed on a claim of a racially hostile work environment, a plaintiff must demonstrate that (1) []he belonged to a protected group, (2) []he was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." Williams v. CSX, 643 F.3d 502, 511 (6th Cir. 2011).

A hostile work environment claim "has both objective and subjective components," such that "'[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive– is beyond Title VII's purview.'" Russell v. Univ. of Toledo, 537 F.3d 596, 608 (6th Cir. 2008) (quoting, Harris, 510 U.S. at 17). Factors to be considered in determining whether a working environment is abusive or hostile include the frequency and severity of the conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with work performance. Warf v. U.S. Dept. of Veterans Affairs, ___ F.3d ___, ___, 2013 WL 148702 at *2 (6th Cir. April 11, 2013). Complaints which fail to allege sufficient facts to raise the inference that a plaintiff was subjected to an abusive work environment are subject to dismissal under Rule 12(b)(6). See, Uppal v. Hosp. Corp. of Am., 482 Fed. App'x 394, 397 (11th Cir. 2012); Rudd v. U.S. Postal Serv., 455 Fed. App'x 279, 284 (3rd Cir. 2011); Bonds v. Leavitt, 629 F.33d 369, 385 (4th Cir. 2011).

Here, Plaintiff's complaint is bereft of factual allegations that would even remotely suggest he was subjected to harassment based on race which was sufficiently severe or pervasive enough to make it plausible that he was subjected to an abusive work environment. Plaintiff's racial

3

harassment claim is based entirely on the following factual allegations:

10. May 4, 2011, Plaintiff arrived to work at or around 0615. Plaintiff entered the North Station building for roll call. Plaintiff went to the copy room and made copies of his activity sheet. Plaintiff then went to the roll call room, and sat beside Officer Drew. While in the roll call room, Plaintiff heard Officer Davenport make the statement that Officer Cooley had "upset the brothers" because Plaintiff usually sat at that table and then said "you going to upset the Ying and Yang" cause the brothers are sitting in the back like they are on a bus. Officer Cooley turned around in his seat and said, "I thought that's where they needed to sit, was on the back of the bus?" They laughed.

11. Plaintiff left roll call and advised his immediate supervisor, Sgt. Keith McGraph, of the statements made and advised that he felt it was racist and created a hostile work environment.

12. On or around, June 8, 2011, Plaintiff was called by Sgt. Granberry to come back to the station because Lieutenant Snyder wanted to meet with him. Lieutenant Snyder asked Plaintiff about the comments that were made by Officer Davenport and Cooley. Plaintiff advised that he was upset and did not feel comfortable in the hostile environment. The lieutenant asked who was present when the comments were made. Plaintiff advised him that of [sic] Officer Pennington, Officer Drew, and Officer Davenport.

13. On or around, June 16, 2011, Plaintiff met with Walt Searcy and Officer Kevin Lusk to discuss the hostile work environment. Mr. Searcy explained that the hostile work environment probably would not get any better. Officer Lusk advised Plaintiff that he had also been called to Lt. Snyder's office with the Commander present and discussed the comments that continued at the station. Mr. Searcy asked what we wanted to do. Mr. Searcy advised Plaintiff and Officer Lusk that they could file an EEOC Complaint.

14. On or around June 20, 2011, Plaintiff received a call from Officer Lusk stating that there were rumors going around the department that Officer Lusk had spoken with the Commander about a hostile work environment.

15. During this time period, Plaintiff was receiving the cold shoulder from coworkers.

16. In or around, September 13, 2011, Plaintiff took his patrol unit to get the computer worked on. Mr. James Bratton stated that he helped an officer with computer problems and the officer wanted to make racial jokes while he was working on the officer's computer. Mr. Bratton stated that he was only trying to help the officer, but didn't want to deal with the racial jokes like that. Plaintiff asked Mr.

4

> Bratton where the officer worked and he replied North Station and that his name was Officer Davenport. This was not the first time Officer Davenport had made racial comments in front of Mr. Bratton.
>
> 17. In or around September 14, 2011, while at roll call Officer Davenport and Officer Pennington were discussing how one of their brothers being with the Aryan Nation. Sgt. Granberry stated that there will be no statements like that tolerated.
>
> 18. This conduct includes, but is not limited to the use of racially derogatory remarks when referring to African American officers.

(Docket No. 11, Amended Complaint ¶¶ 10-18).

In analyzing the sufficiency and plausibility of Plaintiff's hostile work environment claim, the Court is required to "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" Handy-Clay v. City of Memphis, 695 F.3d 531, 538 (6th Cir. 2012) (citation omitted). Even so, all Plaintiff alleges is that during a four month period: (1) he was present on two occasions when improper racially-charged comments were made, but concedes that the first was investigated and he was offered the opportunity to file an EEOC charge, and the second led to a prompt rebuke of the speaker; (2) he heard rumors that one officer had spoken to "the Commander about a hostile work environment," after which Plaintiff received "the cold shoulder from co-workers"; and (3) he heard that an officer told racial jokes to the individual who worked on the department's computers. These allegations simply do not make it plausible that Plaintiff worked in a racially abusive environment.

In this regard, Plaintiff's reliance on Jackson v. Quanex Corp., 191 F.3d 647 (6th Cir. 1999), is entirely misplaced. There, the Sixth Circuit disapproved of the judge's "myopic view" of a harassment claim because each event was considered in isolation, when, in fact, the totality of circumstances should have been considered, including whether statements, comments, and conduct were directed "at the protected group of which plaintiff is a member, not just the plaintiff himself."

5

Id. at 660. Thus, a directed verdict in favor of defendant was reversed where the evidence showed that co-workers frequently used racial slurs calling African American co-workers "nigger" and used racially offensive phrases such as "nigger rigging"; racist graffiti regularly appeared in both the men's and women's restroom and elsewhere in the plant, including the depiction of a lynching and scrawled phrases such as the "KKK is back," and "Blacks out back"; "Nigger Sucker" was written over an employee's name-patch and hung outside his locker; acid valves were left open when a black employee was promoted to the position of tub cleaner, prompting a co-worker to comment, "no nigger is going to bump a white woman"; a Caucasian employee assaulted an African-American employee, calling her "nigger bitch,"and later arrived with a swastika on his hard hat; employees left a crushed salamander on an African-American employee's machine, and hung a "Black O' Lantern" and a "Sambo" drawing near the machine; supervisors were overheard discussing placing stars on their helmets for each minority employee fired; and African American employees were disproportionally disciplined by their supervisors, treated vastly differently with respect to on-the-job training, and received far fewer advancement opportunities. Id. at 650-56. This is just some of the evidence presented in Jackson, but it gives a flavor of the environment at the plant, and is more than enough to make the present case distinguishable.

Jackson is also distinguishable in the way that the employer responded to complaints of racial animus. There, the employer had "a pattern of unresponsiveness . . . to the complaints of its African-American employees." Id. at 665. Here, in contrast, the Amended Complaint actually pleads that management at the police department took action both times Plaintiff complained.

More fundamentally, Jackson is distinguishable because the decision was made on the basis of the evidence presented at trial, whereas this case is at the pleading stage. The Court discusses

Jackson case only because Plaintiff places such heavy reliance on it. This is not to say that a plaintiff need plead anything close to that which was proven at trial in Jackson. It is to say, however, that a plaintiff who, during a four-month period, hears two comments (which may have been off-hand or stray remarks) that management promptly addressed; learns that some other employee may have complained about racial comments; and was informed by another employee that the employee was told racial jokes, simply does not state a plausible claim that a reasonable person would consider the work environment permeated with discriminatory intimidation, ridicule, and insult so sufficiently severe as to alter the conditions of employment.

Plaintiff's case is not saved by the catchall assertion in the factual allegations of the Amended Complaint that "the defendant discriminates against African American police officers by applying a harsher standard to their conduct and to appear less favorable," and that "[d]uring Plaintiff's employment, Plaintiff has been subjected to a racially hostile environment with co-workers making racially charged statements." (Docket No. 11, Amended Complaint ¶¶ 10-18). These are legal conclusions, and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" – "mere conclusory statements do not suffice." Iqbal, 556 U.S. at 662 & 679.

Accordingly, the Court will enter an Order granting Defendant's Motion to Dismiss.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE